S. D. HAYS *v.* LOWNDES SAVINGS BANK & TRUST COMPANY

(No. 8469)

Submitted March 2, 1937. Decided March 16, 1937.

*Charles C. Scott,* for plaintiff in error.
*Powell & Clifford,* for defendant in error.

Fox, Judge:

About the month of March, 1935, plaintiff, S. D. Hays, signed a blank check, drawn on the defendant, Lowndes Savings Bank & Trust Company, and delivered the same to Edith White, his employee, with instructions that she fill out the same for the sum of $25.00 and make it payable to Louise Ramsey in liquidation of a debt. The check signed was on a form furnished by the defendant, for the use of its customers. The employee placed the blank check underneath a cover on the top of a cabinet, neglected to follow the instructions of the plaintiff and later, left his employ. Still later, one Pearl Binegar was employed by the plaintiff as a domestic, and the blank check above mentioned passed into her possession. On or before June 3, 1935, Pearl Binegar filled in the check by writing in the blank spaces the date, the name of the payee, the amount of the check and the word "farm", dating the check June 3, 1935, and making it payable to Helen Cuffner, a fictitious person and for the sum of $212.00. She then indorsed the name Helen Cuffner on the back of the check, presented it to the drawee, the defendant, who paid the check and charged the same to the account of the plaintiff. This suit was instituted by the plaintiff to recover the amount so paid. On completion of the evidence offered on the trial of the case, a motion for a directed verdict was made by each of the parties. The court directed a verdict for the plaintiff, overruled a motion to set it aside, and entered judgment thereon. The defendant prosecutes this writ of error.

The execution of the check in blank by the plaintiff was a careless act on his part, and, were the bank free from negligence, would come under the plain provisions of the negotiable instruments act, Code 46-1-14-16, and also within the spirit of the rulings of this court that where one of two innocent persons must suffer loss through the misconduct of another, the one who, through his negligence, makes the loss possible, must bear the loss. Applying these rules to this case, it is clear that if Pearl Binegar had made out this check payable to herself and indorsed the same, and the same paid to her, upon proper

identification, the bank would have been justified in honoring the check, and the loss sustained would have fallen upon the maker of the check who, by his carelessness, had made it possible that fraud could be perpetrated. This holding is in line with the provisions of the statute and the decisions bearing on the question, and becomes necessary in order to maintain and facilitate the free circulation of negotiable papers in the manifold transactions necessary to carry on the business of the country. It is not considered necessary to cite authorities in support of this position.

Admitting, however, carelessness of the plaintiff in executing the blank check involved in this case, the bank on which it was drawn was not entirely free from obligations to its customer. The relation between a bank and its depositor is that of debtor and creditor. Where a depositor places his money with a bank, a contractual relation is created whereby the bank agrees to pay the money so deposited upon the order of the depositor, and to the person to whom the order is given. This creates an obligation on the part of the bank to pay such order to the person, and to that person only, to whom the order for payment is given, or to the lawful holder thereof. This necessarily requires that the payee or holder of the check be identified by the bank as the person to whom payment is intended to be made. In the matter of identification, the bank acts at its peril. It has the opportunity to demand proper identification, and if it fails to take advantage of such opportunity, and through carelessness, mistake or bad judgment, fails to take the necessary precaution with respect to identification, it cannot claim to be a holder in due course.

> "The rule is well established that ordinarily a banker, on whom a check is drawn, must ascertain at his peril the identity of the person named in it as payee. * * * And where a check is presented by a third person with the alleged indorsement of the payee the bank must ascertain, as a general rule, at its peril, whether the indorsement is good or forged; * * *."

3 R. C. L. 542.

"The drawee bank at its peril must identify the payee of an order instrument. * * * The drawee bank, though it. is not chargeable with knowledge of the genuineness of the signatures of the indorsers in the sense in which it must know the signature of the drawer, owes the depositor the absolute duty to pay it only as directed to the person or persons designated by the drawer, and, in the absence of estoppel or negligence, which is the proximate cause of the loss, and which must be proved by the bank, though on the indorsement of a person bearing the same name as the payee, acts at its peril, and is absolutely liable to him for paying it without the proper indorsement or for paying it in some manner different from that directed or on the indorsement of a person whose name is merely idem sonans."

6 Zollman, Banks and Banking, pp. 429, 431. That the bank is not without duties and obligation with respect to genuineness of indorsement, and identification of one who presents a check, further appears from the following authorities: *Armstrong* v. *National Bank,* 46 *Ohio St.,* 512, 22 N. E. 866, 6 L. R. A. 625, 15 Am. St. Rep. 655; *Shipman* v. *Bank of State of N. Y.,* 126 N. Y. 318, 27 N. E. 371, 12 L. R. A. 791, 22 Am. St. Rep. 821; *Murphy* v. *Metropolitan National Bank,* 191 Mass. 159, 77 N. E. 693, 114 Am. St. Rep. 595; *Jordan Marsh Co.* v. *National Shawmut Bank,* 201 Mass. 397, 87 N. E. 740, 22 L. R. A. (N. S.) 250; *Harmon* v. *Old Detroit National Bank,* 153 Mich. 73, 116 N. W. 617, 17 L. R. A. (N. S.) 514, 126 Am. St. Rep. 467; *Grand Lodge of Kansas, A. O. U. W.* v. *State Bank,* 92 Kan. 876, 142 P. 974, L. R. A. 1915B, 815; *United States Cold Storage Co.* v. *Central Manufacturing District Bank,* 343 Ill. 503, 175 N. E. 825, 74 A. L. R. 811; *Gutfreund* v. *East River National Bank,* 251 N. Y. 58, 167 N. E. 171, 173, 64 A. L. R. 1103. In the case last cited, the court said:

"A bank is bound by contractual obligation to the exercise of due care in the payment of checks bearing the genuine signatures of its depositors. Its negligence defeats the defense of

negligence on the part of the depositor. \* \* \* If it had a right to assume that the checks were the genuine checks of its depositors, because the signatures were genuine and no alterations appeared to excite suspicion, it owed a duty to them to make payment only to the payees therein named, or to their order. It made no inquiry as to the identity of the payees, or as to the genuineness of their purported indorsements. Plaintiffs did not relieve it from that duty. It paid the checks to the makers' employee, Hunold, without inquiry, because it had misplaced confidence in him. If a stranger representing himself as 'C. Swift', for example, had presented the check, the bank would have been bound at its peril to see that he was in truth the payee entitled to receive payment thereon. \* \* \* The depositor has a right to rely on the bank to be careful not to pay out the money to the wrong person. Nothing in the form of the altered checks estopped the plaintiffs from insisting on that right. If by their negligence the checks had been made payable to genuine payees, who received the amounts thereof, or if the amount of the checks had been raised through their carelessness, the case would have been different. The bank might then rely on the form of the checks, and charge the plaintiffs with an estoppel. If we assume that the bank might rely on the checks as being genuine in form, still it did not exercise any care to identify the payees."

This leads us to an inquiry as to what occurred at the time the check was presented. Fortunately, there is no material conflict in the evidence on this point. Pearl Binegar, accompanied by a gentleman friend, went to the banking house of the defendant and presented the Hays check and asked for payment. It was presented to Fred D. Harper, an employee of the defendant, who first examined the check with reference to the genuineness of the signature, compared the same with a signature card on file, and made some inquiry of a fellow employee, George North. Being satisfied of the genuineness of this signature, and the plaintiff

having funds on deposit sufficient to pay the check, he then asked that the person presenting the check be identified as the payee. Pearl Binegar and her friend left the bank with the idea of finding a gentleman by the name of Hickman, who operated a parking lot in the city, and not finding him, then went to Roy R. Miller, an employee of a mercantile firm in the city, and asked him to go to the defendant bank in an effort to identify the person who was presenting the check for payment. The man who accompanied Pearl Binegar had made one or more visits to the store in which Miller was working and had purchased merchandise from him. Miller did not know his name and he had never seen Pearl Binegar. When he went to the defendant bank for the purpose of identifying these people, he states that he told Harper, referring to the gentleman who was with Pearl Binegar, that "I had waited on him in the store several times, but I could not endorse no check because I did not know anything about him." It may be that Miller did not tell Harper that he did not know the name of the man who accompanied Pearl Binegar, but the fact remains that Miller did not know the name of the person, had never seen Pearl Binegar, and only stated that he knew the man by reason of the fact that he had transacted business with him several times in the store in which he was working. The so-called identification by Miller amounted to nothing. What he told Harper gave to the bank no information with respect to the identity of either Pearl Binegar or the gentleman who accompanied her, on which it could with safety rely. Solely upon this statement of Miller, Harper asked the man who accompanied the girl if she was Helen Cuffner; presumably, he replied in the affirmative, and thereupon the check was paid. The defendant was negligent in not further pursuing its inquiry as to the identity of the two people involved in presenting this check, and such negligence was the proximate cause of the damage which resulted from the original carelessness,—or if we choose to call it so, negligence —, of the plaintiff. The obligation of the bank to protect its depositor against the payment of

money to persons other than the person intended, was not met, and the bank must suffer the penalty for its failure to so meet such obligation. In support of our conclusions on this point, we refer to *Citizens' National Bank* v. *Reynolds*, 72 Ind. App. 611, 126 N. E. 234. In that case, Reynolds signed a blank check which fell into the hands of a third party who filled it out, presented it for payment, and it was paid without proper identification. The court held:

> "Where depositor signed check in blank, and the same was lost or stolen, and was filled in by a scoundrel, who inserted the name W. N. Brown, and indorsed the same name, the bank had no authority to pay the check to the person who represented himself to be W. N. Brown unless it could identify such person as W. N. Brown, and, having paid such money, could not lawfully deduct it from the drawer's deposit."

That case is closely analogous to the one at bar. In the body of the opinion, it is stated:

> "The rule is well established that a bank on which a check is drawn must ascertain at its peril the identity of the person named therein as payee. * * * Where a check is presented for payment by a person who is unknown to the bank, it becomes the imperative duty of the bank to require him properly to identify himself as the payee named in the check. For its own protection the bank may go further. It may refuse payment until the stranger brings in a person whom the bank knows to be financially responsible and who is willing to become an indorser.
>
> "If appellant had paid the check to a person who in truth was W. N. Brown, although a person other than the W. N. Brown who was the agent of Reynolds, then we would have a different question with which to deal. But that the bank paid the check to some unknown person who represented himself to be W. N. Brown, and whom the bank is unable to identify, is no defense."

In this case, a proper identification would have disclosed that the person presenting the check was not the payee, Helen Cuffner. Immediately, the bank would have been placed upon notice of fraud in the transaction. It failed to perform its legal duty in the premises and must suffer the consequences.

The judgment of the circuit court of Harrison County is affirmed.

*Affirmed.*